**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RICHARD GRENELL | ) |
| | ) |
| *Plaintiff,* | ) |
| v. | )     CASE NO.: 24-cv-00646-VAED |
| | ) |
| OLIVIA TROYE | ) |
| | ) |
| *Defendant.* | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR
JUDGMENT ON THE PLEADINGS AND FOR DISMISSAL
UNDER VIRGINIA'S ANTI-SLAPP LAW**

## INTRODUCTION

This is a defamation case filed by a former cabinet-level officer and U.S. Ambassador to Germany in reaction to a comment made concerning the performance of his official duties. The allegedly defamatory statement was a single tweet made by a former civil service employee in response to public queries made by two sitting United States Congressmen. As set forth below, this case should respectfully be dismissed not only because the Complaint fails to make out any common law defamation under Virginia law, but also because it is violative of Virginia's statute barring "Strategic Lawsuits Against Public Participation" also known as its "anti-SLAPP" law (Va. Code § 8.01-223.2).

## PROCEDURAL HISTORY

The Plaintiff Richard Grenell filed his original suit before the Circuit Court for the City of Alexandria on August 8, 2022, and sought five million dollars ($5,000,000.00) in damages from the Defendant Olivia Troye ("Ms. Troye") for defamation, and defamation *per se* based on a single tweet. Discovery was completed, including the depositions of both Parties, and the Alexandria Circuit Court set the trial for October 23, 2023. As required by the Court's Scheduling Order, on

October 6, 2023, Ms. Troye filed her trial exhibits along with a Plea in Bar for dismissal of the action. Rather than provide a substantive response to the Plea in Bar or respond with his own trial exhibits, the Plaintiff filed for non-suit by right pursuant to Va. Code §8.01-380, and the case was dismissed as nonsuited on October 12, 2023. On the last possible day, the Plaintiff quietly re-filed his Complaint in Circuit Court on April 12, 2024, and obtained a summons. Before the Complaint was served, Mr. Troye properly removed the case to this Federal Court. (ECF No. 1).

### THE STATEMENT AT ISSUE

In Virginia, defamation must be plead *in haec verba. Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134, 575 S.E.2d 858, 862 (2003), because the exact words used, and the context in which statements are made, are relevant and important to any analysis of the potential defamatory character of a statement. Accordingly, the exact statement at issue, as alleged in the Complaint, is the initial step for any analysis.

The statement was made during a public discussion, on the communication platform then known as Twitter, between and among several public figures, including the Plaintiff, Congressman Ted Lieu, and Congressman Eric Swalwell. The Complaint alleges that the exchange began with the Plaintiff tweeting a complaint about the Biden Administration's methodology in searching for a Supreme Court nominee. Compl., ¶18.[1] Congressman Swalwell and Congressman Lieu responded with the following exchange:

---

[1] The Complaint fails to identify any other tweets by the Plaintiff that would have provided necessary additional context as to how the discourse degraded, but at this stage of the case, Ms. Troye relies only on the material plead in the Complaint.



It was then that Ms. Troye made the tweet that is the subject of this lawsuit:



Ms. Troye's tweet, based on its actual language, asserts that the Plaintiff "tried to get [then Vice President] Mike Pence to attend a white supremacist gathering…." Compl., ¶22. Despite the Complaint's assertions to the contrary, her tweet says nothing about the Plaintiff "having ties to Nazis" or "promoting Nazi ideology", *see id.*, ¶¶23, 41, 42, 43, nor did it accuse him of being a white supremacist, *see id.*, ¶36.

## **LEGAL STANDARD**

For the Plaintiff's claims to survive a Rule 12(b)(6) motion to dismiss, his Complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of any Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). Here, "when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, the Plaintiff must plead adequate facts in order to render a claim for relief plausible. Merely conclusory assertions of support, or "formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555.

Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. Under relevant law, the Plaintiff must provide plausible factual content to nudge a claim beyond mere possibility into actual plausibility. *Id*. at 570; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). *See Pearson v. Prince William Cnty. Sch. Bd.*, No. 122CV377RDAIDD, 2023 WL 2506415, at *2 (E.D. Va. Mar. 14, 2023) *citing Coleman v. Pentagon Fed. Credit Union*, No. 17-cv-18, 2017 WL 1044693, at *6 (E.D. Va. Mar. 17, 2017) ("Plaintiff's speculation, unsupported by any factual allegations, is not enough to survive a motion to dismiss.").

The Virginia Supreme Court has ruled that "statements can be made that are offensive, unpleasant, harsh, and critical without necessarily constituting defamation." *Bryant-Shannon v. Hampton Rds. Cmty. Action Program, Inc*., 299 Va. 579, 588, 856 S.E.2d 575 (2021). For a statement to be actionable as defamation, a false statement must "carry the requisite 'defamatory sting' severe enough to subject the plaintiff 'to contempt, shame, scorn or disgrace.'" *Id*. *quoting*

*Schaecher v. Bouffault*, 290 Va. 83, 95 (2015). An actionable false statement must place the Plaintiff "into infamy." *Bryant- Shannon* at 588. "[L]anguage that is insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole' is not defamatory." *Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998).

Virginia law incorporates the *New York Times v. Sullivan* "actual malice" standard for defamation cases involving public figures. *Jordan v. Kollmann*, 269 Va. 569, 577 (2005). Therefore, under Virginia law, Plaintiff must show "the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Id*. To satisfy this requirement, the Plaintiff must show that Ms. Troye "in fact entertained serious doubts as to the truth" of her publication and "actually had a high degree of awareness of probable falsity." *Id.* at 580. To do so, the Plaintiff must prove by clear and convincing evidence that Ms. Troye acted with actual malice to overcome Virginia's statutory immunity for speech about issues of public concern *and* also because the Plaintiff is a public figure.[2] Relatedly, Ms. Troye's statements directly concerned a matter of public concern, namely, the Plaintiff's actions while he was serving as U.S. Ambassador to Germany. The U.S. Supreme Court has explained:

> [s]peech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. in *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations omitted).

---

[2] There should be no dispute that the Plaintiff is a "public official". The circumstances surrounding the alleged defamation all pertain to a time frame when the Plaintiff served as the U.S. Ambassador to Germany. Because public officials and public figures are subject to identical standards under Virginia law, it is irrelevant which category is actually applied. *Jordan* at 576-577 (no difference between application of standard for public figure or public official). *See also Fairfax v. CBS Corp*., 2 F.4th 286, 292 (4th Cir. 2021) (public officials must show actual malice).

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS FOR DEFAMATION AND DEFAMATION *PER SE* MUST FAIL

Under relevant pleading standards and Virginia law, the Plaintiff's claims must respectfully be dismissed.

#### A.    The Complaint Fails to State a Claim under Virgina Law.

The elements of defamation in Virginia are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015), *quoting Tharpe v. Saunders,* 285 Va. 476, 480, 737 S.E.2d 890, 892 (2013) (internal quotation marks omitted)); *Jordan* at 206. In Virginia, "To be actionable, the statement must be both false and defamatory." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013). In deciding a Rule 12(b)(6) motion, "...courts need not credit vague or conclusory allegations of falsehood." *See Dangerfield v. WAVY Broad., LLC*, 228 F. Supp. 3d 696, 702 (E.D. Va. 2017), *citing Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092–93 (4th Cir. 1993). *See also Weinstein v. Booz Allen Hamilton Inc.*, No. 1:21-CV-461, 2021 WL 12180434, at *2 (E.D. Va. June 1, 2021)("A cause of action for defamation *per se* also fails Rule 8's pleading requirements if the complaint's allegations fail to plausibly support the view that the Defendant knew the statement in dispute was false, or that the Defendant lacked reasonable grounds to believe the statement's truth.").

Here, the Plaintiff's proffered factual support for the second and third elements is inadequate as a matter of law. Specifically, the Court should find as a matter of law that the statement at issue is not actionably sufficient to support a claim for defamation, nor has the Plaintiff supplied more than conclusory allegations that Ms. Troye acted with the requisite intent. Similarly, Ms. Troye's tweet cannot be defamatory *per se*, and may even lack any "defamatory sting" as required to sustain a claim under Virginia law.

The U.S. Supreme Court has made it clear that certain terms like "traitor" constitute "loose language" or "undefined slogans" that cannot be construed as representations of fact. *See Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974). Courts across the country have ruled similarly. *See also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159-60 (9th Cir. 2021) (cable host's description of news network as "paid Russian propaganda" is rhetorical hyperbole in context of other available information); *Koch v. Goldway*, 817 F. 3d 507, 509-510 (9th Cir. 1987) (insinuating someone is a "Nazi" is "understood not as a statement of fact but as a slur against a political opponent … [and] must be classified as opinion, nothing more"); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 806-807 (W.D. Pa. 1972)("[T]o call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic, or sociological philosophies gives no raise to an action for libel").

### B.    The Statement Does Not Reflect, and Plaintiff Fails to Plead, Actual Malice.

It is clear from the Complaint that Ms. Troye's statement concerned the extent to which a senior U.S. government official and prominent political figure carried out his duties, which is the type of speech entitled to the highest degree of legal protection. Under Virginia law, to sustain a claim of defamation or defamation *per se*, a public figure/official plaintiff must plead actual malice, meaning that he must plead facts to establish that Ms. Troye made the alleged statement, "…with knowledge that it was false or with reckless disregard of whether it was false or not." *See Jackson v. Hartig*, 274 Va. 219, 645 S.E.2d 303 (2007), *citing New York Times Co. v. Sullivan*, 376 U.S. 254, 84 (1964). The Fourth Circuit has ruled that, "actual malice "…does not mean ill will or intent to injure but rather that the defendant made the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Fairfax* at 292. Mere negligence is not sufficient, and a Plaintiff can only sustain a defamation claim by showing a

Defendant engaged in conduct that reflects "'much more than a failure to exercise ordinary care.'" *Hatfill v. New York Times Co.*, 532 F.3d 312, 325 (4th Cir. 2008). The Complaint here utterly fails that standard.

Although the Complaint makes a conclusory allegation that Ms. Troye made the statement at issue "knowing they were false or with reckless disregard for the truth of the statements," Compl., ¶35, it pleads no facts in support of that conclusory assertion. *See Weinstein*, No. 1:21-CV-461, 2021 WL 12180434, at *2 ("A cause of action for defamation per se also fails Rule 8's pleading requirements if the complaint's allegations fail to plausibly support the view that the Defendant knew the statement in dispute was false, or that the Defendant lacked reasonable grounds to believe the statement's truth."). The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant. The Court should ask "whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *NY Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Such "rote and conclusory allegations that merely repeat the standards applicable to establishing actual malice, without any particularized facts, are insufficient to plausibly allege actual malice." *Fairfax v. New York Pub. Radio*, No. CR122CV895AJTIDD, 2023 WL 3303125, at *4 (E.D. Va. Apr. 4, 2023) *citing Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 Fed. App'x 234, 240 (4th Cir. 2020) (*per curiam*) (finding conclusory allegation "does not constitute a plausible allegation of actual malice"), s*ee also Mayfield v. Natl. Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012) (same).

8

As with the plaintiffs in each of the above cases, Plaintiff here fails to plead a single fact in support of his conclusory allegations of actual malice, and therefore the Complaint should respectfully be dismissed on that basis alone.

**C.     The Single Tweet at Issue Cannot be Considered Defamation *per se*.**

The statement at issue here is a single tweet by Ms. Troye which stated the simple factual truth that the Plaintiff sought to have the Vice President meet with a group, and she commented on her view of the belief set of that group. That tweet cannot support a claim for defamation *per se* under Virginia law, which provides that the only statements that are actionable *per se* are:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade. All other defamatory words which, though not in themselves actionable, occasion a person special damages are actionable.

*Fleming v. Moore*, 221 Va. 884, 275 S.E.2d 632 (1981) (citations omitted).

Plaintiff attempts to manufacture a claim for defamation *per se* by quoting Ms. Troye's statement, but then grossly mischaracterizing it with words she never used. Claims of defamation *per se* must be based on a defendant's actual statements, and specifically refer to the defamatory statement using the exact words. *Fuste* at 862 (2003) *quoting Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 3 S.E.2d 405 (1939). Although a party may be defamed by "inference, implication or insinuation….the meaning of the alleged defamatory charge cannot, by innuendo, be extended beyond its ordinary and common acceptation. Moreover, innuendo cannot be employed to introduce new matter, nor extend the meaning of the words used, or make that certain

which is in fact uncertain." *Perk v. Vector Res. Grp., Ltd.*, 253 Va. 310, 485 S.E.2d 140 (1997) (quotation marks and citations omitted).

Ms. Troye is not alleged to have made any statements about the Plaintiff's own beliefs or his membership in any political or ideological group. The Complaint attempts to bootstrap a *per se* defamation claim by alleging, without any truthful basis, that Ms. Troye "lied about" plaintiff having ties to Nazis, Compl, ¶24, that he promoted Nazi ideology, *id*., and promoted a Nazi gathering, *id*. at ¶33. None of those statements, which are at the heart of Plaintiff's Complaint, are actually alleged to have been made by Ms. Troye, particularly because it would be impossible to do so. Ms. Troye's statement was nothing more than, as U.S. Ambassador, the Plaintiff suggested the Vice President "attend a white supremacist gathering". Ms. Troye never uttered the word "Nazi," nor did she say anything about the Plaintiff's personal beliefs, his membership in any group, or his promotion of any ideology.

Even if Ms. Troye had said anything about the Plaintiff's personal beliefs, which she did not, that statement would still not legally permit a claim of defamation *per se*. In support of the claim, the Complaint relies primarily on the allegation that the Plaintiff could be arrested and prosecuted in Germany if he were a Nazi, Compl., ¶¶23, 43. Such a speculative and conclusive allegation is entirely insufficient as a matter of law. Virginia law requires that, to support defamation *per se*, an allegation of criminal behavior must be of a crime of moral turpitude for which the plaintiff could be prosecuted. *See Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985); *Yeagle v. Collegiate Times*, 255 Va. 293, 497 S.E.2d 136 (1998). The Plaintiff is in no danger of such prosecution (and never has been), nor did Ms. Troye ever allege he committed a crime for which he could be prosecuted.

The Plaintiff, an American citizen living in the United States, cannot be arrested or prosecuted for supporting or joining any political group, let alone for suggesting a meeting. Similarly, the Complaint makes the conclusory allegation that being called a Nazi would "certainly" harm the Plaintiff in his profession. Complaint, ¶41. Even if Ms. Troye was actually alleged to have called the Plaintiff a "Nazi", which she has not, that conclusory allegation also does not support a claim of defamation *per se*. *See Koch* at 509-510 (insinuating someone is a "Nazi" is "understood not as a statement of fact but as a slur against a political opponent … [and] must be classified as opinion, nothing more"); *Fleming* at 635 (holding charge of racism made against university professor not defamatory *per se*).

In *Perk*, a practicing attorney alleged defamation *per se* based on a statement that he had failed to properly submit certain payments as instructed. *Perk v. Vector Res. Grp., Ltd.*, 253 Va. 310, 485 S.E.2d 140 (1997).  Similar to the Plaintiff here, Perk alleged that suggesting he had failed in that duty impugned his honesty and integrity, and therefore damaged his professional reputation and injured him in his profession. *Id*. But the Virginia Supreme Court found that "to infer such would extend the meaning of the words used beyond their ordinary and common acceptance." *Id*. at 316. The same is true here, and the same result should obtained.

### D.      The Tweet Cannot be Construed as Defamatory as a Matter of Law.

As explained above, Ms. Troye is not alleged to have called the Plaintiff a "Nazi", to have asserted that he associated with Nazis, or to have said that he promotes Nazi ideology. But the defamation claim relies on those statements, Compl., ¶29, and none of them were ever stated by Ms. Troye. *Compare id*. ¶33 *with id*. ¶22. Because the defamation claim turns on those unsupported allegations, it must respectfully be dismissed. The Complaint never actually alleges that the exact statement Ms. Troye made is itself defamatory. Nonetheless, to the extent that the Complaint is

11

read to allege that it is defamatory to assert that a group that the Plaintiff suggested the Vice President meet with was actually "white supremacist," that allegation also fails to support a claim of defamation.

Under Virginia law, to support a claim of defamation, an alleged statement must not be a statement of opinion; it must be demonstrably true or false. The Virginia Supreme Court has explained that "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 861 (2003) (citations and internal quotation marks omitted). For the purposes of defamation analysis, "[s]light inaccuracies of expression are immaterial provided the defamatory charge is true in substance, and it is sufficient to show that the imputation is 'substantially' true." *Jordon* at 206 (internal quotes and citations omitted), *citing Saleeby v. Free Press, Inc.*, 197 Va. 761, 91 S.E.2d 405 (1956). This case presents a classic example of that principle. It is beyond cavil that, as with most characterizations of political philosophies or movements, there is a significant breadth of opinion as to what constitutes a "white supremacist." One's opinion on who would qualify as such would "depend largely on the speaker's viewpoint" and therefore would be matters of opinion that are not actionable as defamation. *See Fuste* at 860. Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion. *Chaves*, at 119. *Fuste* at 860. *See also Jordan* at 569. The Virginia Supreme Court has distinguished between fact and opinion, finding opinion to be nonactionable as defamation. Here, whether the entities the Plaintiff suggested the Vice President meet with would qualify as "white supremacist" is nonactionable opinion as a matter of law.

Furthermore, even if the Court were to conclude that the term "white supremacist" is not a matter of opinion, the Complaint fails to allege facts sufficient to support the assertion that

recommending that the Vice President meet with such a group is defamatory. The Plaintiff was serving as the U.S. Ambassador to Germany, and as Ambassador he undoubtedly met with many varied political groups of many different political leanings. Ms. Troye is not alleged to have said that the Plaintiff is or was a white supremacist, and the Complaint never explains the source of the "defamatory sting" associated with suggesting that the Vice President meet with such a group. *See Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc.*, 299 Va. 579, 856 S.E.2d 575 (2021) (statements made by interim executive director did not carry requisite "defamatory sting" to be actionable as defamation.)

      **E.**    **The Complaint Fails to Plead Damages, or Facts to Support Punitive Damages.**

      The award of punitive damages is generally disfavored, and the Virginia legislature has capped such awards at $350,000.00 (Va. Code §8.01-38.1). Despite this cap, the Defendant claimed $1,000,000 in punitive damages, apparently in the alternative for either count. The Virginia Supreme Court has stated: "We have repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." *Bowers v. Westvaco Corp.*, 244 Va. 139, 419 S.E.2d 661 (1992). In this case, the Complaint fails to adequately allege Ms. Troye's conduct is the type of egregious conduct sufficient to justify the award of punitive damages. Specifically, the Complaint merely asserts in conclusory fashion that the Plaintiff is entitled to, "compensatory, special and punitive damages" in an amount to be proven at trial of $5,000,000. Compl., ¶39.

      Ms. Troye's conduct – posting a single tweet – is simply insufficient conduct to support a claim for punitive damages under Virginia law. Due to the Plaintiff's status as a public figure/official, he must plead and prove actual malice to recover either punitive or presumed

(general) damages for defamation by clear and convincing evidence. *Shenandoah Publ'g House, Inc. v. Gunter*, 427 S.E.2d 370, 372 (1993). He must also provide the Defendant with fair notice of what category of damages was caused by her allegedly defamatory statements. There are simply no factual allegations that could support any "special" damages claim, and the conclusory language used in the Complaint fails to meet the pleading standard for causation or an award of punitive damages in a defamation action.

Finally, it is not clear from the Complaint what portion of the claimed damages of $5,000,000 are for compensatory damages, nor what conduct justifies special or punitive damages. The Complaint fails to specify what portion of the claimed *ad damnum* reflects economic, actual, or emotional distress damages for the total claimed. Given the Complaint fails to place Ms. Troye on adequate notice of how the alleged $5,000,000 in damages were caused or calculated, and fails to specify what damages correspond to her conduct, the Complaint fails to meet the pleading standard and respectfully must be dismissed.

## II.   JUDGMENT FOR THE DEFENDANT SHOULD BE GRANTED ON THE PLEADINGS

If the Court finds the factual record sufficient to warrant denying dismissal under Rule 12(b)(6), it can, in the alternative, grant judgment on the pleadings for Ms. Troye in reliance upon Rule 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). In determining whether a party is entitled to judgment on the pleadings, the court also must accept as true all material facts alleged in the non-moving party's pleading and view those facts in the light most favorable to the non-moving party. "Generally, a Rule 12(b)(6) motion tests the sufficiency of the complaint and cannot reach the merits of an affirmative defense. But when all the facts necessary to the affirmative defense clearly appear on the face of the

complaint, a Rule 12(b)(6) motion, and therefore a Rule 12(c) motion, may reach a defense."
*Brown v. Brown*, No. 1:23-CV-984, 2023 WL 7179471, at *1 (E.D. Va. Oct. 30, 2023) citing
*Goodman v. Praxair*, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (internal quotation marks omitted).

In a motion for judgment on the pleadings, as with a motion to dismiss for failure to state
a claim, a court may consider an extrinsic document that is both undisputed and central to the
claim at issue. In *Penn v. 1st S. Ins. Servs., Inc.*, 324 F. Supp. 3d 703, 713 (E.D. Va. 2018), this
Court explained:

> Ordinarily, [on a motion to dismiss,] a court may not consider any documents that
> are outside of the complaint, or not expressly incorporated therein, without
> converting the motion into one for summary judgment. However, there are a
> number of exceptions to this rule. Specifically, a court "may consider official public
> records, documents central to a plaintiff's claim, and documents sufficiently
> referred to in the complaint, so long as the authenticity of these documents is not
> disputed," without converting the motion into a motion for summary judgment.[3]

*See also Perez*, 774 F.3d at 1340 n.2; *see also Sprengle v. Smith Mar. Inc.*, 2023 U.S. Dist. LEXIS
36001, *22-*23 (M.D. Fla. Mar. 3, 2023) (clarifying extrinsic evidence must be referenced in
complaint itself, be central to plaintiff's claim, and must be of unquestioned authenticity). Courts
are particularly permitted to take judicial notice of newspapers and other publications for the
limited purpose of determining what statements the document contain. *See Davis v. McKenzie*,
2017 U.S. Dist. LEXIS 183519, *12 (S.D. Fla. Nov. 3, 2017), *citing United States ex rel. Osheroff
v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

Here, as set forth in section I above and section III below the facts as plead clearly do not
support a claim for defamation or defamation *per se*, and therefore judgment pursuant to Rule
12(c) is appropriate.

---

[3] *See Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F.Supp.2d 460, 464 (E.D. Va. 2013) (citations
omitted); *see also Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

### III.   THE CLAIMS MUST BE DISMISSED UNDER VIRGINIA'S ANTI-SLAPP STATUTE

Virginia law immunizes individuals against civil liability for defamation for statements made "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party," Va. Code Ann. § 8.01-223.2(A). Ms. Troye's statements were made concerning a matter of public concern, and the Complaint fails to allege any facts sufficient to support an allegation that she lacked a reasonable belief they were substantially true.

Strategic Lawsuit Against Public Participation" ("SLAPP") lawsuits commonly take the form of defamation suits, like this one. These suits are designed to intimidate and punish an individual for making statements about issues of "public concern" by forcing them to defend against expensive, protracted litigation. The Plaintiff's performance as U.S. Ambassador to Germany, and later as acting Director of National Intelligence, was squarely a matter of public concern. Such matters are afforded the highest level of protection under the First Amendment to the Constitution, and Virginia law. *See Jackson*, 645 S.E.2d 303. Public official plaintiffs alleging defamation in statements critical of them, involving matters of public concern, are constitutionally required to clear a high bar. *See Fairfax* at 292 (4th Cir. 2021) ("[T]he freedom of speech guaranteed by the First and Fourteenth Amendments requires this heightened intent standard in defamation actions brought by public officials, the Supreme Court has reasoned, "to insure the ascertainment and publication of the truth about public affairs." *St. Amant v. Thompson*, 20 L.Ed.2d 262 (1968); *see also CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008).

Virginia's anti-SLAPP statute is designed to enable honest and full discourse without fear of reprisal or retaliation. The purpose of the statute is "to deter lawsuits that are designed to chill speech about matters of public concern." *See McCullough v. Gannett, Co.*, No.

16

122CV1099RDALRV, 2023 WL 3075940, at *15 (E.D. Va. Apr. 25, 2023). In enacting the statute, the Commonwealth had precisely this type of suit in mind, those "intended to force upon a political opponent the high cost of defending against a lawsuit." *See id.*, *quoting ABLV Bank v. Ctr. for Advanced Def. Stud. Inc.*, No. 1:14-cv-1118, 2015 WL 12517012, at *2 (E.D. Va. April 21, 2015).

In this case, Ms. Troye's single tweet was clearly about a matter of public concern, and she had a good faith basis for believing it to be true. Therefore, the Plaintiff's Complaint should respectfully be dismissed in its entirety.

A.   **Given Plaintiff's Claims Were Groundless, Frivolous Or Unreasonable, Ms. Troye Should Be Awarded Reasonable Attorney's Fees And Costs.**

Virginia's anti-SLAPP statute provides, among other things, that "[a]ny person who has a suit against him dismissed or [a subpoena quashed] pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Va. Code Ann. § 8.01-223.2(B). The Fourth Circuit has interpreted this provision in the Statute to be permissive. *Fairfax*, at 296-97.

Va. Code Ann. § 8.01-223.2 does not define what qualifies as a "public concern." Other States, applying their own anti-SLAPP statutes, have essentially regarded any issue pertaining to a public official to be a matter of public concern. *See, e.g., Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal. App. 5th 416, 430, 212 Cal. Rptr. 3d 589 (Cal. Dist. Ct. App. 2d Dec. 19, 2016) ("Bribery of a senator and its connection with health care legislation is undeniably a matter of public concern."); *Deaver v. Desai*, 483 S.W.3d 668, 672 (Tex. Ct. App., 14th Dist. Dec. 3, 2015) (applying Texas anti-SLAPP statute which expressly defines "matter of public concern" to include an issue related to "a public official or public figure").

In determining when to award attorney's fees and costs in anti-SLAPP suits, the Honorable Anthony Trenga noted in *Fairfax v. CBS Broadcasting, Inc.*, 534 F.Supp.3d 581 (E.D. Va. 2020) that:

Court have also sometimes looked to whether an award of attorney's fees is necessary to address an imbalance in resources or to protect a defendant from a plaintiff with an unfair financial advantage, *see, e.g., Sy v. United Parcel Serv. Gen. Servs. Co.*, 1999 U.S. Dist. LEXIS 9862, at *4 (D. Or. 1999) ("A factor considered by the court in deciding whether to deny costs [sought pursuant to 28 U.S.C. § 1920] is the relative resources of the parties.") (*citing Braxton v. United Parcel Serv.*, 148 F.R.D. 527, 528-29 (E.D. Pa. 1993)), or whether an award of fees would unfairly discourage other plaintiffs from bringing colorable claims, *see, e.g., Tancredi v. Metro. Life Ins. Co.*, No. 00 Civ. 5780, 2003 WL 2299203, 2003 U.S. Dist. LEXIS 17743, at *18-20 (S.D.N.Y. Oct. 7, 2003) (noting, while assessing the amount of attorney's fees to award a prevailing defendant under 42 U.S.C. § 1988, that "the amount of the award must be sufficient to serve this purpose without being so harsh as to deter a potential plaintiff from bringing a close but not frivolous case.").

Unlike the defendant in *Fairfax*, which was a large multi-national media company and well positioned to defend itself (and certainly not a financially-vulnerable victim that was outmatched by the resources of the plaintiff), Ms. Troye is a financially modest individual who formerly served as a civil servant. The Plaintiff has already twice pursued her for a defamation action and forwent the opportunity to take this case to trial in October 2023. If there was any seriousness to his effort, he would not have waited until literally the last minute to refile a case he voluntarily nonsuited six months earlier.

In *Malone v. WP Co., LLC*, 2023 U.S. Dist. LEXIS 176018 (W.D. Va. Sept. 29, 2023), the Court similarly denied awarding attorney's fees given the goliath nature of the Defendant being able to defend itself against such suits. *Id*. at *24. But it did not go unnoticed that the "Plaintiff has filed repeated defamation cases and is represented by a lawyer who has sued Defendant three times in the past three years. And if Plaintiff continues to bring defamation actions like those that have been dismissed, there will come a time when his lawsuits might fairly be deemed frivolous and awarding attorney fees is appropriate." *Id*. at *24-25. That fact pattern is met here.

B.    <u>**This Lawsuit Is Part Of Lawfare MAGA Campaign To Silence Critics.**</u>

As discussed above, and as noted in *Fairfax* and *Malone*, when considering whether anti-SLAPP fees are appropriate, courts look to not only the instant suit, but to the context in which the suit was filed, including whether the suit is part of a larger effort to discourage speech.  *See Malone* at 24-25. This lawsuit is part of a MAGA campaign by the Plaintiff, and particularly his legal counsel, to silence and punish those who criticize them and other MAGA luminaries.[4] The Binnall Law Group, which is representing the Plaintiff, has been repeatedly filing lawsuits on behalf of the MAGA world, including for prominent public officials such as former President Trump, *see e.g. Trump v. Clinton et al.*, 653 F. Supp. 3d 1198 (S.D. Fla. 2023) (conspiracy lawsuit), *Trump Media v. Guardian et al.* Case No. 2023-CA-0081880 (Fla. 12th Cir. Ct. Nov. 20, 2023)(defamation case), *Trump Media v. Washington Post*, Case No. 23-cv-1535-TPB-AAS (M.D. Fla.) (defamation case); former National Security Advisor Michael Flynn, *Flynn v. Wellman*, Civil Action No. 23-02501-VMC-UAM (M.D.Fla. Nov. 24, 2023); *Flynn v. Stern*, Case No. 2023-CA-2052 (Fla. 7th Cir. Ct. Dec. 5, 2023)(defamation case); *Flynn v. Stern*, 2022 U.S. Dist. LEXIS 201512, (Case No. 8:22-cv-01250-TPB-AAS)) (M.D. Fla. Nov. 4, 2022) (defamation case); *Flynn v. Weissmann et al.*, Case No. 23-cv-02429 (M.D. Fla. Oct. 24, 2023) (defamation case); *Flynn v. Wilson*, Case No. 2023-CA-004264 NC (Cir. Ct. Sarasota, July 13, 2023) (defamation case); *Flynn v. Stewartson*, Case No. 2023-CA-004264 NC (Fla. 12th Cir. Ct. May 3, 2023) (defamation case); former Congressman

---

[4] The Fourth Circuit has stated, "While considering a 12 (b) (6) motion, we 'may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.' ' " (citations omitted) ); And, "[T]here are exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (*per curiam*).  Moreover, the information provided in this section is provided in support of Defendant's request for anti-SLAPP fees, and not in support of its arguments for dismissal under Rule 12, and the Court is free to consider this public record information in making its fee award decision.

Devin Nunes (R-CA), *see e.g.* Reuters, *Washington Post asks US judge to sanction Trump ally Devin Nunes*, Oct. 12, 2023[5] and former Department of Defense official Kash Patel ("Mr. Patel"), *Patel v. Liu et al.*, Civil Case No. 23-cv-2699 (D.D.C.) (*Bivens* case). Candidly, this list is just a fraction of the cases the Binnall Law Group is handling, many of which are either not aggressively prosecuted, dismissed not long after filing and/or involve the imposition of sanctions.

In fact, in the *Clinton* lawsuit pending in the U.S. District Court for the Southern District of Florida, where former President Trump and several of his attorneys have already been sanctioned nearly $1,000,000 in fines for filing the lawsuit in violation of Rule 11, 653 F. Supp. 3d at *passim*, the Plaintiff's attorneys entered that case right before sanctions were imposed (ECF No. 274 – Notice of Appearance of attorney Jared Roberts) and thereafter sought to reverse the decision by alleging new evidence had been obtained (ECF No. 331). The Court excoriated the arguments proffered by the current Plaintiff's very own lawyers and reiterated that the Motion was nothing less than characteristic of:

> Mr. Trump's pattern of misusing the courts to serve a political purpose. The telltale signs being:
> • Provocative and boastful rhetoric;
> • A political narrative carried over from rallies;
> • Attacks on political opponents and the news media;
> • Disregard for legal principles and precedent; and
> • Fundraising and payments to lawyers from political action committees.

*Clinton*, Case No. 22-cv-14102, slip op. Sept. 15, 2023, *14 (ECF No. 343). There is little difference between how the Plaintiff's counsel handled that case and how this one has been previously. The tactics and intent are the same.

---

[5]   Mike Scarcella, *Washington Post asks US judge to sanction Trump ally Devin Nunes*, Reuters, Oct. 12, 2023, *https://www.reuters.com/legal/government/washington-post-asks-us-judge-sanction-trump-ally-devin-nunes-2023-10-12/* (last visited May 10, 2024) (defamation case).

The question arises as to who or what is paying for all of these lawsuits.[6] It is publicly known that Mr. Patel, who shares office space on the same floor with the Binnall law firm, created a charity, *www.FightwithKash.com,* and has stated that "the whole point" of his charity is "helping other people" in need, but he has also said its work is, at least in part, about bringing "America First patriots" together and "helping fight the Deep State." ABC News, "Trump loyalist Kash Patel's tax-exempt charity raises questions", experts say, March 8, 2023.[7]

It has been admitted by the Plaintiff that Mr. Patel is at least partially funding this effort to target Ms. Troye. Exhibit A. Indeed, the views of the Plaintiff's lawyer, Mr. Binnall, on the subject are quite clear as he threatened as part of this lawsuit that RINOs ("Republicans in Name Only") are on notice that they can "no longer lie about America First Republicans with impunity any more."



---

[6] It was recently learned that FEC records show that between January 1, 2023, and June 30, 2023, Donald Trump's Super PAC, SAVE AMERICA, made payments to the Binnall Law Group that exceeded one million dollars. Federal Election Commission, *Disbursements,* *https://www.fec.gov/data/disbursements/?data_type=processed* *&committee_id=C00762591&recipient_name=binnall&two_year_transaction_period=2024* (last visited Feb. 5, 2024).

[7] Mike Levine, *Trump loyalist Kash Patel's tax-exempt charity raises questions, experts say*, ABC News, Mar. 8, 2023, *https://abcnews.go. com/US/trump-loyalist-kash-patels-tax-exempt-charity-raises/story?id=97657747* (last visited Feb. 5, 2024). Mr. Binnall serves on the organization's Board of Directors. *See* Fight with Kash, *Team*, *https://thekash foundation.com/team* (last visited Feb. 5, 2024).

Per the tweet, Ms. Troye is a RINO. The Plaintiff is an "America First Republican." This case is being funded by a third party as a fight against the "Deep State" rather than a true attempt to recover personal damages for the Plaintiff. This is exactly the type of case Virginia's anti-SLAPP statute is designed to protect against.

The implication is clear: the Plaintiff and his counsel are waging a legal war to grind down political opponents with baseless and meritless lawsuits. The goal of these lawsuits arguably is not to secure actual monetary judgments – and certainly not in the amount of $5,000,000 for a single tweet, *see* Compl., ¶39 – as much as it is to silence through financial attrition those who exercise their protected First Amendment rights to inform the public regarding the political agenda of the Plaintiff and his legal counsel.

That is the very type of case Virginia's anti-SLAPP law is designed to prevent.

Accordingly, this Court should respectfully grant Ms. Troye an award of legal fees and costs.

Dated: May 10, 2024                              Respectfully Submitted,

                                                 */s/ Thomas M. Craig*
                                                 Thomas M. Craig, (VSB #58063)
                                                 Grace H. Williams (VSB # 88103)
                                                 **Fluet** | 1751 Pinnacle Drive, Suite 1000
                                                 Tysons, Virginia 22102
                                                 T: (703) 590-1234
                                                 F: (703) 590-0366 fax
                                                 tcraig@fluet.law
                                                 gwilliams@fluet.law

                                                 Mark S. Zaid (*pro hac vice* pending)
                                                 **Mark S. Zaid, P.C.**
                                                 1250 Connecticut Avenue, N.W.
                                                 Suite 700
                                                 Washington, D.C. 20036
                                                 T: (202) 498-0011
                                                 F: (202) 330-5610
                                                 Mark@MarkZaid.com

                                                 *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2024, a true and correct copy of the foregoing was served

via email, facsimile, and U.S. Mail to the following attorneys of record:

Jesse Binnall, Esq.
Jason Greaves, Esq.
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
F: 703-888-1930
jesse@binnall.com
jason@binnall.com

*/s/ Thomas M. Craig*
Thomas M. Craig, Esq.