UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD GRENELL, *Plaintiff,* v. OLIVIA TROYE, *Defendant.* | CASE NO.: 24-cv-00646-VAED |

**REPLY TO PLAINTIFF RICHARD GRENELL'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR JUDGMENT ON THE PLEADINGS AND FOR DISMISSAL UNDER VIRGINIA'S ANTI-SLAPP LAW**

Plaintiff Richard Grenell ("Mr. Grenell"), the former U.S. Ambassador to Germany (2018-2020) and Acting Director of the Office of National Intelligence (2020) during the Administration of President Donald J. Trump, is auditioning for a job in a potential second Trump Administration. This harassing defamation lawsuit against someone he views as a critic, much like his failed "Stop the Steal" effort in Nevada, is one of the spaghetti noodles he is throwing against the wall just hoping something will stick.[1] Mr. Grenell brazenly claims Defendant Olivia Troye ("Ms. Troye") defamed him to the tune of five million dollars in damages, by issuing a single tweet that stated he, while Ambassador, "tried to get [then Vice President] Mike Pence to attend a white supremacist gathering during one of his overseas trips." Compl., ¶22 (Dkt. 1-2). Even though Ms. Troye's best defense is that the statement is unequivocally true, for purposes of this Motion Mr. Grenell's claims are simply not, as a matter of law, actionable for defamation. No matter how contorted Mr. Grenell wishes to twist Ms. Troye's isolated statement into an accusation of him being a "Nazi" – an

---

[1] *See* "He Threw 'Spaghetti at the Wall' for Trump. Now He's After a Top Job", New York Times, May 25, 2024, at *https://www.nytimes.com/2024/05/25/us/politics/grenell-trump-cabinet.html*, attached at Exhibit 1.

assertion countless other people, to include Members of Congress, have publicly and repeatedly directed at Mr. Grenell – even that false equivalence does not create a legal claim that can survive this Motion to Dismiss ("Def.'s Mot.").

This second iteration of Mr. Grenell's lawsuit was pursued on the very last possible day before he was barred from bringing it. His first attempt was brought to the Circuit Court for the City of Alexandria in August 2022. While he highlights, along with acknowledging his argument has no precedential value, the fact that the Circuit Court previously overruled a demurrer filed early in the first case, *see* Plaintiff's Opposition to Defendant's Motion to Dismiss or Judgment on the Pleadings and for Dismissal under Virginia Anti-SLAPP Law at 7 (filed May 24, 2024) ("Pl.'s Opp'n") (Dkt. 12), he neglects to provide further context regarding the eleventh-hour nonsuit of his claims on the eve of trial. Ms. Troye had filed a Plea in Bar on the merits of the allegations and was poised to prevail. *See* Exhibit 2. Little else explains why Mr. Grenell would run from a lawsuit that he had litigated for over a year and which he still claims holds such significant merit.

## ARGUMENTS

At the outset it should be noted that Mr. Grenell has not challenged the removal of his lawsuit in the Circuit Court of Alexandria to this Court. Nor has he challenged the fact that he is a public figure/official. Therefore, both of those issues appear conceded. *See Browne v. Waldo*, No. 3:22-CV-648-HEH, 2023 WL 2974483, at *4 (E.D. Va. Apr. 17, 2023) ("Behavior that is consistent with waiver, and which indicates an intent to litigate the case on the merits, is sufficient to constitute waiver, regardless of whether the parties also express an intent to preserve the defense.") quoting, *In re Asbestos Products Liab. Lit.*, 921 F.3d 98, 107 (3d Cir. 2019).

I.     **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DEFAMATION OR DEFAMATION PER SE**

    A.     **The Alleged Statement is Not Defamatory.**

Mr. Grenell hangs his hat on two words that Ms. Troye tweeted, that of "I do." Pl.'s Opp'n at 1. That answer was in response to a question posed by Congressman Ted Lieu (D-CA) of whether there was any proof that Mr. Grenell had "[hung] out with Nazis" while he was Ambassador to Germany." *Id*.

In Mr. Grenell's complaint, Ms. Troye's statement, which was that the Plaintiff, "tried to get [then Vice President] Mike Pence to attend a white supremacist gathering while on one of his overseas trips", Compl., ¶22 (Dkt. 1-2) somehow gets transformed into the assertion that Mr. Grenell is a "Nazi". That, according to Mr. Grenell, is defamatory. As proof he cites to several cases dating back to World War II, Pl.'s Opp'n at 6 n.3, but times of course have changed in the more than six decades since those cases were decided. Mr. Grenell's reliance on those cases is misplaced for several reasons. First, those cases largely concern specific and express accusations of affiliation or association with Nazis, which Ms. Troye never actually stated, despite the Plaintiff's assertions otherwise. Second, those cases reflect a time when accusations of Nazi affiliation or sympathizing carried a more literal meaning, because of the recency of the events of World War II. Third, those cases construed state law jurisprudence from states without apparent relevance to Virginia law on defamation and were decided prior to many key precedents on defamation from both the Virginia Supreme Court and the United State Supreme Court.

Mr. Grenell's reliance on case law involving accusations of Nazi affiliation never addresses the myriad federal precedents which reached the opposite conclusion. Several federal courts in evaluating whether a singular accusation of being a Nazi or a fascist could sustain a cause of action for defamation have found such words were not actionable. Critically, these cases are more recent

than those cases relied on by the Plaintiff, and address or follow *the New York Times v. Sullivan* standard. *See e.g.*, *Koch v. Goldway*, 817 F. 2d 507, 509-510 (9th Cir. 1987)(insinuating someone is a "Nazi" is "understood not as a statement of fact but as a slur against a political opponent … [and] must be classified as opinion, nothing more"); *Buckley v. Littell*, 539 F.2d 882, 893-94 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062, 50 L. Ed. 2d 777, 97 S. Ct. 785, 97 S. Ct. 786 (1977) ("fascist" not defamatory); *Frank v. Fine*, 2024 U.S. Dist. LEXIS 2891, *8 (January 5, 2024, M.D. Fla.) ("being called a Nazi or coward are not verifiable statements of fact that would support a defamation claim."); *McClanahan v. Anti-Defamation League*, 2023 U.S. Dist. LEXIS 223495, *12 (December 15, 2023, W.D. Mo.) ("Whether someone or their expressions are deemed antisemitic, white supremacist, anti-government, or bigoted is a matter of individual interpretation—making such statements nonactionable opinions."); *Trump v. CNN, Inc.*, 2023 U.S. Dist. LEXIS 131215, *13 (July 28, 2023, S.D. Fla.) ("Being 'Hitler-like' is not a verifiable statement of fact that would support a defamation claim."). *See also Beverly Hills Foodland v. United Food & Com. Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (the term "fascist" is non-actionable opinion); *Starks v. TULA Life, Inc.*, No. 8:23-CV-4, 2023 U.S. Dist. LEXIS 128760, 2023 WL 4763829, at *4 (D. Neb. July 26, 2023) ("calling an individual a 'racist' or characterizing a person's statements as being 'racist' or 'hateful,' standing alone, is not 'capable of proof or disproof'" and collecting cases from around the country). Such name calling, in the context of public debate, is protected speech because of the "profound national commitment that debate on public issues should be uninhibited, robust, and wide open, and . . . may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

Mr. Grenell bizarrely asserts that the term "white supremacist" is provably true or false, seemingly because it is in the dictionary, while the term "racist" is "largely subjective and a matter of degree" Pl.'s Opp'n at 5. This distinction is flawed for many reasons. As set forth above, and in Defendant's Motion, the terms "racist", "fascist", and "white supremacist" have repeatedly been found not to be actionable. And, of course, each of those terms can be found in the dictionary, making that supposed distinction nonsensical, and each are equally subject to degrees and interpretation, similar to the term "racist." Furthermore, the subjectivity of the phrase, although important, itself is not the crux of the issue here. Rather, the analysis turns on whether the Defendant's statements concerning the Plaintiff are actionable. Here, because Ms. Troye's statement concerned a matter of public concern, her allegations that Mr. Grenell established a meeting with an objectionable group, is not defamatory because she did not make such statements with actual malice, and in any event, such statements lacked the required "defamatory sting."

Throughout his Opposition, Mr. Grenell reveals the weakness of his arguments by twisting the Defendant's words beyond their plain meaning and failing to engage in the substance of her arguments. *See Perk v. Vector Resources Group, Ltd.,* 485 S.E.2d 140, 144 (Va. 1997) (Holding that the meaning of an allegedly defamatory statement "cannot, by innuendo, be extended beyond its ordinary and common acceptation.") (internal quotes and citations omitted). The Complaint twists and distorts Ms. Troye's actual words in one tweet, alleging she advanced "plausible inference" of the Plaintiff's Nazi affiliation, Pl.'s Opp'n at 8, he conveniently does not substantively respond to the immunity argument advanced in the Defendant's Motion.

**B.      Mr. Grenell has Failed to Meet the High Standards Required of Public Figure Defamation Plaintiffs.**

Under Virginia law, the public figure plaintiff must allege facts sufficient to establish (1) publication of (2) an actionable statement with (3) the requisite intent. *Chapin v. Knight–Ridder,*

5

*Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Public figure plaintiffs must further allege plausible facts from which a court could find the Defendant acted with actual malice, or "with knowledge that it was false or with reckless disregard of whether it was false or not." *Flanagan v. Pittsylvania Cnty., Virginia*, No. 7:19CV00413, 2020 WL 2754754, at *8 (W.D. Va. May 27, 2020) citing *New York Times Co. v. Sullivan*, at 279–80 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). To survive a Rule 12 motion, the Plaintiff must allege specific facts showing Ms. Troye in fact entertained serious doubts about the truth of her statements. *See generally St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Mr. Grenell never alleges facts sufficient to establish that Ms. Troye had actual malice, and he cannot because he knows that after taking the prior case to the eve of trial, no such facts exist.

Plaintiff's Opposition makes much of the fact that this is the Plaintiff's second attempt to sue for defamation but fails to point out that the first case proceeded to the close of discovery, including the depositions of both parties. Despite the extensive development of the factual record in that case, Plaintiff still fails to allege a single fact supporting his allegation of actual malice. The Plaintiff's second complaint made minor adjustments to his previous allegations, but Plaintiff admits that the factual allegations are "substantially identical" to those made in the first case. Pl.'s Opp'n at 2. Having completed discovery on his claims once before, Plaintiff could have included factual allegations of malice, if any existed, whether based on Ms. Troye's testimony or otherwise. He included no such supporting facts because she lacked malice. This defect is fatal to his complaint, which should be dismissed.

Plaintiff's assertion that, despite the lack of specific factual allegations of actual malice, the Court should infer the existence of malice is predicated on inapposite or distinguishable case law. Plaintiff relies on *Spirito v. Peninsula Aiport Comm'n* 350 F.Supp. 3d 471, 481 (E.D. Va.

2019) to argue that the Complaint's allegations create "a plausible inference" of Ms. Troye's malice. Pl.'s Opp'n at 8. In *Spirito*, the defamatory comments turned on the propriety of shredding documents in the workplace. In that case, the Plaintiff alleged that his fellow employees observed, or could have observed, the Plaintiff regularly shredding documents, and knew or should have known that such actions were routinely done, and not inconsistent with company policy. Because Plaintiff had alleged facts to support that assertion, the court in that case was able to find that Defendant's implication, that Plaintiff's shredding of documents was nefarious or reflective of wrongdoing, lacked support, and the alleged malice was expressly supported within the specific allegations of the complaint. Here, Plaintiff does not, and cannot, explain how the mere fact that Ms. Troye was a civil servant on the Vice President's staff would have put her in a position to know that her statement was false. If any such facts exist, and they do not, those facts do not appear in the Complaint.

Similarly, the Plaintiff's reliance on *Steele v. Goodman* 382 F. Supp. 3d 403, (E.D. Va. 2019), Pl.'s Opp'n at 8, is ill-founded, not only because he misstates the main holding and justification for the court's ruling, but also because the complaint in that matter contained specific factual support absent here. In *Steele*, the Plaintiff's "well pleaded" complaint supplied specific facts supporting alleged malice by the Defendant. In that case, the court evaluated the specific reasons the Defendant knew the statements made, which alleged fraud, lacked support and why there was knowledge of falsity or reckless disregard for truth, "In particular, the Plaintiffs contend that, despite familiarity with Plaintiffs' websites and access to Plaintiffs' publicly-available online financial records, Defendants used these videos to claim—without evidence—that Plaintiffs defrauded donors." *Id*. at 427. Here, the Complaint utterly fails to allege specific facts sufficient to support Mr. Grenell's assertion of actual malice. Thus, the cases the Plaintiff relies on supplied

actual facts supporting malice or an inference of malice. Plaintiff's conclusory allegations from the Complaint do not, and therefore he does not meet the relevant pleading standard.

Courts considering the evaluation of expressions of criticism of employee's performance of their duties are not necessarily actionable as defamation, even when they are stated within the employment context, and are unfavorable. *See, e.g., Nigro v. Va. Comm. University/Medical College of Va.*, 492 F. App'x 347, 356 (4th Cir. 2012) (statements "based on ... perceptions of [a plaintiff's] performance" are "expressions of opinion" and "cannot be proven false"); *Morrissey v. WTVR, LLC*, No. 3:19-CV-747, 2020 WL 110750, at *4–5 (E.D. Va. Jan. 9, 2020) (holding that "fool," "clown," "nonstop, one ring circus," and "liar" were not actionable); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 524–35 (W.D. Va. 2019) (in context, "liar" and similar statements were non-actionable, noting for example that the "statement accusing Edwards of causing 'rifts' employs precisely the sort of loosely definable or variously interpretable term that cannot reasonable be interpreted as a statement of fact") (internal quotation marks omitted). *Flanagan v. Pittsylvania Cnty., Virginia*, No. 7:19-CV-00413, 2020 WL 2754754, at *8, n. 6 (W.D. Va. May 27, 2020). Ms. Troye's statements were "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution"; and (2) not "made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false." Va. Code Ann. § 8.01-223.2(A). Thus, the Defendant's assertion in context, that the Plaintiff tried, but failed, to set up a meeting with an objectionable group, under the relevant case law, is no more than a fair critique of his efforts as a public official.

## II.     RULE 12(c) CAN BE APPLIED TO THIS MATTER AT THIS TIME

Mr. Grenell is correct that Ms. Troye has yet to file an Answer in this matter. Given that fact, he argues that Ms. Troye's attempt to rely on Fed. R. Civ. P. 12(c), which states: "After the

pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings", must fail. Pl.'s Opp'n at 14-15. His basis is that an Answer must have been filed for pleadings to be considered "closed". *Id*. That conclusion is not supported, however, by the available case law. As the U.S. District Court for the District of Maryland in *Language v. MCM 8201 Corporate, LLC*, 2021 U.S. Dist. LEXIS 34541 (Feb. 24, 2021, D. Md.), noted when similar facts were presented in that no answer had been filed, such motion:

> *may* be premature and more properly construed as a motion to dismiss under Rule 12(b) or converted to summary judgment under Rule 56. *See* Wright & Miller, 5C Fed. Prac. & Proc. Civ. §§ 1368, 1369 (3d ed.); *see also Yang v. Navigators Group, Inc.*, 18 F. Supp. 3d 519, 525-26 (S.D.N.Y. 2014) (construing the defendant's Rule 12(c) motion as a Rule 12(b)(6) motion because the defendant had not answered the Amended Complaint).

*Language*, 2021 U.S. Dist. LEXIS 34541, *5 (emphasis added). The Court then exercised its discretion to nonetheless consider the Motion for Judgment on the Pleadings, particularly because the "Plaintiff has not objected to the filing of the motion under Rule 12(c), and no prejudice will result from considering the motion before the filing of an answer." *Id*. Here, while Mr. Grenell argues the Motion is premature, he also believes that "[e]*ven if the motion were proper, however, it would still fail for the reasons above*." Pl.'s Opp'n at 15. That is not a ringing endorsement of an objection but more importantly it can certainly be construed that even Mr. Grenell believes no prejudice will occur if a substantive determination is issued on the merits of this argument.

### III. VIRGINIA'S ANTI-SLAPP LAW APPLIES IN FEDERAL PROCEEDINGS

Mr. Grenell argues first that "Virginia's Anti-SLAPP statute cannot apply in federal court because it creates only procedural, not substantive rights." Pl.'s Opp'n at 11. This position, which his lawyers keep arguing in different jurisdictions, is simply incorrect. The plain language of the statute, and several published cases directly contradict this assertion. Numerous federal courts in this District have applied the statute. *See e.g., McCullough v. Gannett, Co.*, No. 1:22-CV – 1099 –

RDA/LRV, 2023 WL 3075940 (E.D. Va. Apr. 25, 2023); *Fairfax v. New York Pub. Radio*, No. 1:22-CV-895:AJTIDD, 2023 WL 3303125, at *5 (E.D. Va. Apr. 4, 2023). ("If a civil suit is dismissed based on this immunity, a defendant 'may be awarded reasonable attorney fees and costs.'") Indeed, the plaint language of Va. Code § 8.01-223.2(b) permits this court to evaluate fee requests, and the Fourth Circuit Court of Appeals has also concluded the district court may award such fees in its discretion. In construing Virginia's Anti-SLAPP statute, the Fourth Circuit specifically stated, "the Virginia fee statute authorizes an award whenever a suit is dismissed pursuant to anti-SLAPP immunity, whether at the threshold, at summary judgment, or after a trial on the merits." *Fairfax v. CBS Corp.*, 2 F.4th 286, 297 (4th Cir. 2021). The Defendant's assertion that "…Virginia's Anti-SLAPP statute cannot apply in federal court because it creates only procedural, not substantive rights" (Pl.'s Opp'n at 11) is baseless and contrary to precedent.

Mr. Grenell asserts that truthful statements concerning his and his counsel's actions, are "frivolous – even sanctionable," Pl.'s Opp'n at 14. This is incorrect. The conduct of an attorney in repeatedly bringing specious tort claims is relevant to court's discretionary award of attorney's fees pursuant to Virginia's anti-SLAPP law. In support of this assertion, the Defendant identified a case that supported her inclusion of such information, *Malone v. WP Co., LLC*, 2023 U.S. Dist. LEXIS 176018 (W.D. Va. Sept. 29, 2023). The court in *Malone* stated in part, "Plaintiff has filed repeated defamation cases and is represented by a lawyer who has sued Defendant three times in the past three years. And if Plaintiff continues to bring defamation actions like those that have been dismissed, there will come a time when his lawsuits might fairly be deemed frivolous and awarding attorney fees is appropriate." *Id.* at *24-25. Def.'s Mot. at 19. This Court can and should consider the context of this suit, including prior defamation litigation involving Plaintiff's counsel which may be relevant.

10

To further support Ms. Troye's request for this case to be dismissed pursuant to Virginia's anti-SLAPP law, and especially for attorney's fees to be assessed, this Court should consider the frivolity of Mr. Grenell's lawsuit. Notwithstanding the fact that discovery took place during the initial litigation and Mr. Grenell was deposed, his renewed Complaint still falsely asserts allegations he has already admitted are untrue. Compare Complaint, ¶43 (Ms. Troye's tweet caused Plaintiff to face possible prosecution in Germany) with Exhibit 4 (Plaintiff's deposition, pp. 64 – no fear of prosecution in Germany); Complaint ¶37 with Exhibit 4 (Plaintiff's deposition, pp. 52-53, 57, 89-92, 126-128 – acknowledges no known damages). Compare Def.'s Mot. Exhibit A (Dkt. 7-1) with Exhibit 3 (denying the existence of documents of financial contribution of third parties, then admitting to received funding).

### IV. CONCLUSION

As a cabinet level public official, Mr. Grenell has failed to meet the pleading standards applicable to alleged defamation. Despite ample opportunity to develop facts to support his claims, the Complaint fails to allege facts showing Ms. Troye acted with malice. Troye's comments are not actionable, and the Defendant's Motion should be granted, and she should be awarded her attorney's fees under Virginia's Anti-SLAPP statute Va. Code Ann. § 8.01-223.2.

Dated: May 30, 2024                              Respectfully Submitted,

*/s/ Thomas M. Craig*
Thomas M. Craig, (VSB #58063)          Mark S. Zaid (pro hac vice)
Grace H. Williams (VSB # 88103)        **Mark S. Zaid, P.C.**
**Fluet**                              1250 Connecticut Avenue, N.W.
1751 Pinnacle Drive, Suite 1000        Suite 700
Tysons, Virginia 22102                 Washington, D.C. 20036
T: (703) 590-1234                      T: (202) 498-0011
F: (703) 590-0366 fax                  F: (202) 330-5610
tcraig@fluet.law                       Mark@MarkZaid.com
gwilliams@fluet.law
                                       *Counsel for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to counsel of record for all parties.

                                                */s/ Thomas M. Craig*
                                                Thomas M. Craig, Esq.