IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RICHARD GRENELL,                )
                                )
    Plaintiff,                  )
                                )
                                )       Civil Action No. 1:24-cv-646 (RDA/WEF)
    v.                          )
                                )
OLIVIA TROYE,                   )
                                )
    Defendant.                  )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Olivia Troye's Motion to Dismiss (Dkt. 28). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been briefed and is now ripe for disposition. Considering the Motion together with the Amended Complaint (Dkt. 26), Defendant's Memoranda in Support (Dkt. 29), Plaintiff's Opposition (Dkt. 32), and Defendant's Reply (Dkt. 33), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

### I.    BACKGROUND

#### A.    Factual Background[1]

Plaintiff Richard Grenell ("Plaintiff") is a former Acting Director of National Intelligence and a former United States Ambassador. Dkt. 26 ¶ 2. Plaintiff is a citizen of the State of California. *Id.* Defendant Olivia Troye ("Defendant") is a former aide to former Vice President Michael Pence and owner of the Troye Group LLC, which is a registered limited liability company in the

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Commonwealth of Virginia that consults on political issues to the private sector. *Id.* ¶ 3. Defendant is a citizen of the Commonwealth of Virginia and the City of Alexandria. *Id.*

Plaintiff served as spokesman to four United States Ambassadors at the United Nations from 2001 to 2008. Dkt. 26 at 4. In 2010, Plaintiff founded the consulting company Capitol Media Partners, where he presently consults on policy and political communications. *Id.* Plaintiff became the United States Ambassador to Germany, serving his country from May 8, 2018, until June 1, 2020. *Id.* While serving as an Ambassador, Plaintiff was appointed as the acting Director of National Intelligence. *Id.* Plaintiff served as Acting Director of National Intelligence from February 20, 2020, to May 26, 2020. *Id.* While Acting Director of National Intelligence, Plaintiff continued to serve as the Ambassador to Germany and was also a member of a special presidential envoy for Serbia and Kosovo peace negotiations. *Id.* In June of 2020, Plaintiff was made a senior fellow at the Carnegie Mellon University's Institute for Politics and Strategy. *Id.* In August of 2020, Plaintiff was named Special Advisor for National Security and Foreign Policy at the American Center for Law and Justice. *Id.* In the same month, he became a senior advisor to the Republican National Committee. *Id.* In December of 2021, Plaintiff joined Newsmax as an on-air analyst and contributor. *Id.* Following the first Trump Administration, Plaintiff joined private equity business ventures overseas. *Id.* at 5. In December 2024, following the election of Donald Trump to a second term, Plaintiff was named the Presidential Envoy for Special Missions. *Id.* In February of 2025, Plaintiff was also appointed by President Trump as the Interim Director of the Kennedy Center. *Id.* Finally, in May of 2025, Plaintiff joined the Board of Directors at Live Nation. *Id.*

On April 7, 2022, Plaintiff tweeted his opinion of the Biden Administration restricting its search for potential nominees for the open seat on the Supreme Court of the United States to certain minorities. *Id.* at 8. An exchange of tweets ensued between Plaintiff and U.S. Congressman Ted

2

Lieu. *Id.* On April 8, 2022, U.S. Congressman Swalwell tweeted to Congressman Lieu a comment that Plaintiff hung out with Nazis during his time serving as the Ambassador to Germany. *Id.* Plaintiff asserts that this was a lie. *Id.* Congressman Lieu replied to Congressman Swalwell, asking if he had proof of this allegation. *Id.*

Defendant then joined the conversation by tweeting that she did in fact have proof that Plaintiff associated with Nazis. *Id.* Defendant went on to allege that Plaintiff tried to have Vice President Pence attend a white supremacist event while he was on an overseas trip. *Id.* Plaintiff asserts that, in Germany, being a Nazi is a serious crime and that it is even a crime to openly sympathize with Nazis or promote Nazi ideas. *Id.* at 9. Plaintiff asserts that, despite knowing the serious ramifications of calling someone a Nazi and a white supremacist, and because Defendant is bitter toward Trump administration officials in general and Plaintiff in particular, Defendant deliberately lied about Plaintiff having ties to Nazis and of promoting Nazi ideology. *Id.* Plaintiff asserts that Defendant did so with reckless disregard for the truth or falsity of her allegations. *Id.* Plaintiff then tweeted to Defendant demanding that she back up her claims. *Id.* Defendant chose not to respond to Plaintiff's tweet. *Id.* at 10.

On April 9, 2022, Plaintiff again tweeted at Defendant following up on his request that she provide her proof or retract her tweet, stating "Olivia won't respond because she is slandering me." *Id.* Plaintiff asserts that, to date, Defendant has not retracted her statement or produced any of her alleged proof. *Id.* Plaintiff further asserts that Defendant's tweet was viewed by thousands, and multiple news outlets picked up Defendant's alleged lies, further spreading them. *Id.* Plaintiff alleges that, Defendant, as an experienced political operative, knew that being a former aide to the vice president would elevate the reach and perceived credibility of her tweet. *Id.* at 11. Plaintiff also alleges that Defendant knew that her accusation, regardless of its invalidity, would be picked up by the media and repeated without criticism or question. *Id.* Plaintiff asserts that Defendant is

3

a savvy political operative, who did it for the malicious purpose of denigrating and attacking the reputation of someone whose politics she dislikes. *Id.*

Plaintiff's career revolves around national security and foreign affairs. *Id.* at 5. Plaintiff asserts that, on the world stage, Plaintiff's credibility and reputation are integral to his profession. *Id.* Plaintiff asserts that even mere association with Nazi or white supremacist interests disqualifies an individual from service, especially in the eyes of his peers internationally. *Id.* Plaintiff further asserts that this is also true of his work in private equity and consulting and that his work would dry up and be less valuable, if he is affiliated with or believed to have promoted Nazi or white supremacist interests while serving as ambassador in Germany. *Id.* Plaintiff asserts that this damage is exacerbated by the fact that the false accusation came from a former staffer. *Id.* at 6. Plaintiff further alleges that this accusation has also deprived him of past business and career opportunities, as well as greatly impacting his chances for current and future business and career opportunities. *Id.*

### B.    Procedural Background

On April 12, 2024, Plaintiff filed his Complaint in the Circuit Court for the City of Alexandria. Dkt. 1-2 at 2, 12. On April 19, 2024, Defendant filed a Notice of Removal to Federal Court and the case was subsequently removed to this Court. Dkt. 1-3. On May 10, 2025, Defendant filed a Motion to Dismiss or for Judgment on the Pleadings and for Dismissal under Virginia's Anti-SLAPP Law. Dkt. 6. On February 27, 2025, this Court granted Defendant's Motion to Dismiss or for Judgment on the Pleadings. Dkt. 16.

On March 13, 2025, Plaintiff appealed the Court's decision to the Fourth Circuit. Dkt. 16. Before the Fourth Circuit reached the merits of the appeal, Plaintiff filed an unopposed motion to remand the matter to this Court, as this Court had permitted Plaintiff to file an amended complaint.

4

Dkt. 23. On July 22, 2025, the Fourth Circuit filed its judgment and remanded the matter to this Court, consistent with Plaintiff's request. Dkts. 23, 24.

On July 23, 2025, this Court ordered Plaintiff to file an amended complaint within ten days of the Order. Dkt, 25. On August 4, 2025, Plaintiff filed an Amended Complaint. Dkt. 26. On August 13, 2025, the Fourth Circuit's mandate issued. Dkt. 27. On August 18, 2025, Defendant filed a Motion to Dismiss. Dkt. 28. On September 2, 2025, Plaintiff filed his Opposition. Dkt. 32. On September 8, 2025, Defendant filed a Reply. Dkt. 33.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to

5

the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### III.    ANALYSIS

Plaintiff's Amended Complaint asserts defamation and defamation *per se* claims against Defendant. Importantly, although Plaintiff was provided with an opportunity to amend and further address both claims in an amended complaint, Plaintiff concedes that he failed to do so with respect to the defamation claim. Dkt. 26 at 2 n. 1 ("Plaintiff acknowledges that this amendment does not materially address the first part of this Court's opinion relating to the defamatory nature of the statements."). The Court will address each count in turn.

### A.    Defamation

Again, for Plaintiff's first cause of action, defamation, Plaintiff acknowledges that his Amended Complaint does not materially address the issues detailed in this Court's Memorandum Opinion and Order related to that claim. Dkt. 26 at 2. Plaintiff states that "Plaintiff cannot, and does not attempt to, address that aspect of the Court's order." *Id.* Plaintiff further states that he "preserves all argument he made in the Opposition to the Motion to Dismiss, but amends with the objective of clarifying the record." *Id.* Because Plaintiff provides no additional support and concedes that he has not amended his complaint related to the claim, the Court rests on its reasoning in its prior Memorandum Order and Opinion (Dkt. 15) that the allegations lack defamatory meaning and will again dismiss Plaintiff's defamation count for failure to state a claim.[2]

---

[2] In the Court's Memorandum Opinion and Order (Dkt. 15), the Court held that Plaintiff "cannot argue that merely being associated with certain interests is defamatory." Dkt. 15 at 4 (citing *American Conservative Unit v. Institute for Legislative Analysis*, 2025 WL 510236, at *13 (E.D. Va. Feb. 13, 2025) (internal quotation marks omitted) (dismissing defamation claim premised on the allegation that plaintiffs were associated with influential persons and causes); *Deripaska v. Assoc. Press*, 282 F. Supp. 3d 133, 149 (D.C. 2017) (dismissing defamation claim

Nonetheless, because Plaintiff raises additional arguments in response to the pending Motion, the Court will address those here. To state a claim for defamation under Virginia law, a plaintiff must plead three elements: (i) publication; (ii) of an actionable statement; and (iii) with the requisite intent. *Va. Citizens Defense League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018). To be actionable, a statement must be both false and defamatory; that is, they must "injure one's reputation in the common estimation of mankind, to throw contumely, shame or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt." *Id.* The false statement must "carry the requisite defamatory sting severe enough to subject the plaintiff to contempt, shame, scorn or disgrace." *Bryant-Shannon v. Hampton Rds. Cmty. Action Program, Inc.*, 299 Va. 579, 588 (2021). "[S]tatements can be made that are offensive, unpleasant, harsh, and critical without necessarily constituting defamation." *Id.* Moreover, where a plaintiff brings a defamation claim (rather than defamation *per se*), the plaintiff must allege actual damages. *Fleming v. Moore*, 221 Va. 884, 894, 275 S.E.2d 632, 638–39 (1981). This Court previously ruled that the statements alleged were not "actionable." Dkt. 15 at 5 n. 3 (citing cases that such statements are non-actionable or opinion statements).

Plaintiff argues that the cases cited in the Court's previous Memorandum Opinion and Order differ from the posture of his case because Defendant's statement was more than an alleged association and was "a specific accusation about a specific event" whereas the other cases pertain

---

premised on allegation that plaintiff was associated with the interests of the Russian government)). Further, numerous courts have held that "[s]tatements indicating a political opponent is a Nazi . . . . are odious and repugnant . . . [b]ut they are not actionable defamation . . . ."); *Frank v. Fine*, 2024 WL 473718, *4-5 (M.D. Fla. Jan. 5, 2024) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2024 WL 473720 (M.D. Fla. Jan. 19, 2024); *see also Jorjani v. New Jersey Inst. of Tech.*, 2019 WL 1125594, at *8 (D.N.J. Mar. 12, 2019) ("[C]alling [the p]laintiff a 'white supremacist' is synonymous with calling [the p]laintiff 'racist,' and thus will not result in defamation liability."). Thus, this Court again finds that the statements alleged are not defamatory.

to abstract name calling. Dkt. 32 at 5. But Plaintiff does not explain how that changes the analysis of whether the statement is capable of defamatory meaning. Moreover, the part of the statement to which the Plaintiff apparently objects is not that Defendant alleged that Plaintiff invited the former Vice President but that he was associated with Nazis. As Plaintiff puts it, the defamatory portion of the statement is that Plaintiff "urged the Vice President to attend a white supremacist gathering." Dkt. 32 at 11. Although whether Plaintiff extended an invitation to the former Vice President to attend any event is a matter which is provably false, Plaintiff does not suggest that did not invite Vice President Pence anywhere during the trip to Germany. The defamatory portion of the statement is the reference to Nazis and, as courts recognize, whether a group qualifies as "Nazis" is an inactionable or opinion statement. Dkt. 15 at 5 & n. 3 (citing cases). Despite the second opportunity to brief the issue, Plaintiff cites not a single case which reached a contrary result. Indeed, the case which Plaintiff cites, *Deripaska v. Assoc. Press*, 282 F. Supp. 3d 133 (D.C. 2017), determined that the statements at issue were not capable of defamatory meaning. *Deripaska*, 282 F. Supp. 3d at 146 ("Thus, even if the article falsely states that Deripaska and Manafort had a contract to promote Russian interests, as the Court assumes here, that statement fails to convey any defamatory meaning."). Plaintiff even implicitly concedes that non-actionable nature of the statement when he argues that the defamation relates to a "so-called white supremacist gathering." Dkt. 32 at 11. Accordingly, Plaintiff has failed to establish defamatory meaning.

Furthermore, Plaintiff fails to allege damages. Plaintiff's allegations regarding damages are conclusory and speculative and, in fact, Plaintiff pleads concrete facts suggesting that he was not damaged. Plaintiff alleges in conclusory fashion that he lost business opportunities, but he fails to identify a single such opportunity. Dkt. 26 ¶ 24. Moreover, Plaintiff speculates that, "*if* he is affiliated with or believed to have promoted Nazi or white supremacist interests," then he

8

receives less work. *Id.* ¶ 22. By contrast, Plaintiff acknowledges that, since these remarks were posted, he has: (i) received private equity opportunities overseas (*id.* ¶ 18); (ii) been named the Presidential Envoy for Special Missions (*id.* ¶ 19); (iii) been named the Interim Director of the Kennedy Center (*id.* ¶ 20); and (iv) joined the Board of Directors at Live Nation (*id.* ¶ 21).

Thus, finding that Plaintiff has not pled facts sufficient to show defamatory meaning or damages, the Court will grant the Motion with respect to the defamation claim.

### B.    Defamation *Per Se*

With respect to Plaintiff's second count, the Supreme Court of Virginia has recognized that certain words can constitute defamation *per se*: (i) those which impute to a person some serious crime involving moral turpitude; (ii) those which impute to a person a contagious disease; (iii) those which impute to a person unfitness to perform the duties of an office or employment; and (iv) those which prejudice such person in his or her profession or trade. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006). The third category of defamation *per se* requires that "such statements damage [Plaintiff's] standing to engage in his . . . chosen profession and carry the connotation that he . . . lacks the integrity and fitness to [carry out his role]. *Tronfeld*, 272 Va. at 714. For the fourth category, the Supreme Court of Virginia has noted, "[t]hat a defamatory statement may have had an adverse impact upon a plaintiff's work [but] does not make that statement *per se* defamatory where the defamation is not 'necessarily hurtful' to the plaintiff's business and does not touch upon the plaintiff in his special trade or occupation." *Fleming v. Moore*, 221 Va. 884, 890 (1981). This claim also fails for lack of defamatory meaning, but fails for the additional reasons that Plaintiff fails to establish defamation *per se*.

Here, Plaintiff asserts that Defendant's statement weighs on his fitness to perform the duties of his various roles and that the statement subjects him to prejudice. To demonstrate the effect of Defendant's statement on his professional pursuits, in his Amended Complaint, Plaintiff

9

details his professional background. Dkt. 26 at 4-6. Although Plaintiff's Amended Complaint adds these relevant facts, Plaintiff still fails to allege facts showing that the statements bear any weight on Plaintiff's fitness or ability to perform the duties of his office or employment. Thus, this Court finds that Plaintiff has failed to allege facts pursuant to defamation *per se* under the third category of defamation *per se*. Plaintiff does not allege any facts that assert that these statements impact his *fitness or ability* to perform his roles. Indeed, whether Plaintiff invited the former Vice President to attend any event does reflect on his particular duties as an Ambassador. Judges in this District have found that plaintiffs have failed to satisfy this standard even where the alleged defamatory comments relate to the plaintiff's termination so long as they do not "necessarily" reflect on the plaintiff's ability to perform his duties. *Marroquin v. Exxon Mobil Corp.*, 2009 WL 1529455, at *9 (E.D. Va. May 27, 2009) (accusation that plaintiff was terminated for doing something "very bad" was not defamation *per se* because it did "not establish the required nexus with Plaintiff's particular employment responsibilities or ability to perform his job that would support Plaintiff's claim of defamation per se"). Plaintiff has not met this standard.

The Court finds that Plaintiff's Amended Complaint similarly falls short in its attempt to allege facts sufficient to show that Defendant's statement subjects him to the prejudice required under the fourth category. Plaintiff identifies his trade or profession as diplomacy and/or national security. But as the Court noted previously, the Supreme Court of Virginias has previously cited with approval a case that touches closely on the issue presented here. Namely, in *Fleming v. Moore*, 221 Va. 884 (1981), the Supreme Court of Virginia cited with approval a case determining that calling an ambassador a Communist was not defamation *per se*. *Id.* at 890 (citing *Korry v. Int'l Tel. & Telegraph Corp.*, 444 F. Supp. 193, 196 (S.D.N.Y.1978)). As previously stated in this Court's Memorandum Opinion and Order (Dkt. 15), other courts have held that similar claims are not defamatory. *See American Conservative Unit*, 2025 WL 510236, at *12-13 (dismissing claim

10

where plaintiffs had not explained how those alleged statements were necessarily hurtful to their business); *Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 716 (D. Md. 2021) (dismissing claim where "Harvey does not even attempt to articulate why connecting him to the Nunes' investigation related to Biden would expose him to public scorn") (emphasis in original); *Guilford Trans. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. Ct. App. 2000) ("[Defamation] necessarily, however, involves the idea of disgrace; and while a statement that a person is a [part of a certain political group] may very possibly arouse adverse feelings against him . . . it cannot be found in itself to be defamatory . . . ."). Like the plaintiffs in those cases, Plaintiff here similarly fails to adequately assert facts showing that Defendant's statement had bearing on his ability to perform any of his professional responsibilities. Moreover, Plaintiff again fails to address the *Fleming* Court's reliance on *Korry*, the other cases cited by this Court, or to cite any cases where such an accusation has been found to constitute defamation *per se*. Thus, the Court finds that Plaintiff has not pled facts necessary for the fourth category of defamation *per se*.

*   *   *

In sum, the Court will dismiss the Complaint because Plaintiff has failed to state a claim. Because further amendment would be futile, the Court will dismiss the Amended Complaint with Prejudice.[3]

---

[3] Defendant also seeks dismissal under Virginia's Anti-SLAPP statute, but does so merely by incorporating her prior briefs. Dkt. 29 at 10 ("Defendant otherwise incorporates by reference the further arguments related to Virginia's anti-SLAPP law set forth in Defendant's Motion to Dismiss the original Complaint, Dkt. 7."). But this incorporation by reference is inappropriate. *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) ("We agree with the district court that McCarver cannot preserve arguments merely by incorporating them by reference in a few sentences in his brief."). Thus, having made no substantive argument on the Anti-SLAPP statute in the *pending* Motion, the Court denies the Motion in this regard.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss

(Dkt. 28) is GRANTED-IN-PART and DENIED-IN-PART; and it is

FURTHER ORDERED that the Amended Complaint (Dkt. 26) is DISMISSED WITH

PREJUDICE.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all

counsel of record and to place among the ended causes.

IT IS SO ORDERED.

Alexandria, Virginia
March __25__, 2026

/s/
_____
Rossie D. Alston, Jr.
United States District Judge

12